**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOHNNIE RAY COOK,**

                **Plaintiff,**

-vs-                                          Case No. 6:08-cv-1607-Orl-DAB

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested. Doc. No. 14. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

### *I. BACKGROUND*

**A.    Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on August 4, 2005, alleging an onset of disability on July 28, 2005, due to degenerative disc disease, lumbar disc disease, a shoulder impingement, and lower back pain. R. 18, 55-57, 88. His application was denied initially and upon

reconsideration. R. 18-20. Plaintiff requested a hearing, which was held on September 11, 2007, before Administrative Law Judge Droker (hereinafter referred to as "ALJ"). R. 344-69. In a decision dated October 18, 2007, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 7-17. Plaintiff timely filed a Request for Review of the ALJ's decision, and the Appeals Council denied Plaintiff's request on July 22, 2008. R. 3-6. Plaintiff filed this action for judicial review on September 18, 2008. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff was fifty-four years old at the time of the October 2007 hearing decision (R. 55), with a high school education, plus three years of junior college. R. 348. He had past relevant work as a construction worker, television installer, truck driver, and lawn service worker. R. 78-87.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of sharp pain from his shoulder up through his neck, and in his lower back and legs. R. 88. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from disorder of the spine, right shoulder impingement, and hypertension, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R.12-13. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, except that he must be given a sit/stand option and must avoid ladders and operation of and proximity to heavy moving machinery, with occasional limitations bending, crouching, kneeling, stopping, squatting, or crawling, and must avoid pushing and pulling arm controls and avoid overhead reaching with his right arm. R. 13-14. In making this determination, the ALJ found that Plaintiff's

allegations regarding his limitations were not totally credible. R. 15. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 15.

Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a cashier II, sales attendant, and an order caller. R. 16. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 16.

Plaintiff now asserts a single point of error, with several sub-issues. Plaintiff contends the ALJ erred by failing to give the treating pain management doctor's opinion controlling weight and by failing to state the weight given to it, and in giving the consulting examiner's opinion controlling weight. This led the ALJ to erroneously conclude that Plaintiff had the RFC to perform light work contrary to the limitations imposed by the treating physician. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### *III. ISSUES AND ANALYSIS*

Plaintiff claims that the ALJ should not have found him able to perform light work in light of limitations assigned by his treating pain management physician, Dr. Dinash Yanamadula. Plaintiff argues that the ALJ erred in his decision and failed to show that "good cause" existed to give less weight to Dr. Yanamadula's opinion[1] because the contrary evidence cited by the ALJ was either not substantial evidence or was consistent with Dr. Yanamadula's opinion. Plaintiff argues the opinion of the non-examining state agency physician is entitled to little weight and, taken alone, does not constitute substantial evidence to support the ALJ's decision; additionally, the report dates from October 2005, nearly two years before the hearing (citing R. 15, 187-94). Plaintiff argues that the regulations require the ALJ to give the opinion of a treating physician greater weight than the opinion of a non-treating state agency physician who, in this case, indicated that Plaintiff could do a significant range of light work in contradiction to the treating physician's opinion. The Commissioner contends that the ALJ properly weighed the medical source opinions, and accorded them the weight warranted by the evidence.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments

---

[1] Plaintiff acknowledges that the ALJ's decision not to assign Dr. Yanamadula's opinion controlling weight was based on the inconsistency with three items of evidence: (1) the opinion of a non-examining state agency consultant that Plaintiff could perform a range of light work; (2) the consultative examination from October of 2005; and (3) a May 2007 record that indicated that Plaintiff was able to do his activities of daily living with a tolerable amount of pain on his current medication regimen. Doc. No. 13 at 11 (citing R. 13).

is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Dr. Yanamadula, a board certified pain medicine specialist at Central Florida Pain & Spine Institute, began treating Plaintiff in December 2003 for pain resulting from failed rotator cuff surgery five times, and disorders of the spine, including herniated discs; he continued to treat Plaintiff through the time of the hearing in 2007. R. 97-168, 274-76, 332-37. Initially, in December 2003 and well prior to the alleged onset date of July 2005, Dr. Yanamadula treated Plaintiff for neck pain with bilateral radiculopathy and paraesthesias and bilateral shoulder pain. R. 274-276. After administering an EMG test, Dr. Yanamadula diagnosed Plaintiff with a herniated cervical disk and C8-T1 and C6-C7 radiculopathy. R. 331-337. Dr. Yanamadula treated Plaintiff with medications, trigger point injections, nerve blocks, and a cervical epidural steroid injections. R. 328-337. The cervical epidural injections were ineffective. R. 325. Dr. Yanamadula noted that Plaintiff was employed as a mechanic, which required heavy lifting and exacerbated his symptoms. R. 325.

By March 2004, Plaintiff was still experiencing severe low back pain and he had experienced complete numbness of both legs and difficulty ambulating; Dr. Yanamadula referred Plaintiff for an MRI, which showed degenerative disc disease mainly in the L4-L5 and L5-S1 levels with a concentric disc bulge of the L4-L5 disc, causing bilateral forminal stenosis and significant herniation/extrusion of the L5-S1 disc to the left paracentral causing forminal stenosis and multilevel facet hypertrophy.

R. 320-21. Dr. Yanamadula recommended lumbar epidural steroid injections under fluoroscopic guidance, but Plaintiff could not afford the fee for the surgical center so Dr. Yanamadula administered epidural steroid injections at his office. R. 318-319. Records from April 2004 to July 2004, note increasing and shoulder, neck and back pain; however, for financial reasons Plaintiff was unable to undergo the recommended lumbar epidural steroid injections until July 13, 2004, when Plaintiff did undergo a series of L4 epidural steroid injections and bilateral medial branch blocks at L2 through L5. R. 304-310, 313 & 315. Dr. Yanamadula treated Plaintiff with left AC joint and bursal injections and continued to prescribe medication to treat the pain. R. 310-16.

Plaintiff's alleged onset date is July 28, 2005. R. 10. Dr. Yanamadula's notes from July 27, 2004 through June 29, 2005 show a continuing pattern of shoulder neck, and low back pain and the physician's consistent advice for Plaintiff to find a different job less physically demanding because of the constant exacerbation on his shoulder, neck, and back conditions and the continuing damage caused by his heavy work. R. 279-303; *see, e.g.,* R. 297 ("I have requested the patient numerous times to stop working and find a different job, but he states that he cannot." - November 2004); R. 302 ("I have strongly told the patient that he needs to change his job because ultimately this is going to make his condition extremely worse. The patient states that he has no choice left to work now, but he is in the current process of applying for disability." - August 2004).

In November 2004, Dr. Yanamadula administered paravertebral nerve blocks at L3 through L5 and right subacromial bursal and AC joint injections to Plaintiff. R. 296. In February 2005, Dr. Yanamadula performed right medial branch radio-frequency lesioning at L2 through S1 on Plaintiff. R. 291-292. Although Plaintiff initially had 75%-80% relief, by May 2005, Dr. Yanamadula's notes reflect Plaintiff's comments that the "radio-frequency lesioning helped a little bit, but it [the pain] is

starting all over again." R. 285, 290. Subsequent radio-frequency lesioning at L2 through S1 in June 2005 (R. 280-283) gave 60-70% relief, but Plaintiff continued to have pain in both legs. R. 279. On June 29, 2005, one month before the alleged onset date, Dr. Yanamadula opined:

> The patient still continues to have severe shoulder pain and severe rotator cuff syndrome issues in the bilateral upper extremities. There is nothing more we can do from that. He is not a surgical candidate because he has undergone numerous surgeries already. Therefore in my opinion, I do not feel that this patient can do the type of job that he is doing. He is only doing more and more damage to his body, which will be irreparable. I strongly feel that this patient should go on long-term disability *or try a different job because this heavy work load that he is having to do right now is only going to make his condition worse.* Therefore, I am requesting that this patient be placed on disability.

R. 279 (emphasis added). Plaintiff had told the physician that "there is no other choice" than that he keep working; he testified at the hearing that he was supporting his family (which included four of his adult children (ages 36, 32, 31, and 24) who lived with him and only one worked - R. 348-49), but he was in the process of applying for disability as of August of 2004 (R. 302), although he ultimately claimed an alleged onset date of July 2005 and kept working up until that time. On July 28, 2005 – the alleged onset date – Dr. Yanamadula noted that Plaintiff "continues to hurt quite significantly" and continued to have bilateral lower extremity pain and bilateral shoulder pain; he requested Plaintiff's lawyers to ask for medical records to place him on disability. R. 278.

On January 13, 2006, Dr. Yanamadula completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical) for Plaintiff, which limited Plaintiff to lifting ten pounds occasionally/frequently; standing and/or walking less than two hours in an eight-hour work day; alternating sitting and standing to relieve pain or discomfort; limited pushing and pulling in both upper and lower extremities due to bilateral rotator cuff syndrome and severe herniated lumber disc; no climbing, crouching or crawling, and occasional balancing and kneeling, and limited reaching in

-8-

all directions. R. 169-71. Dr. Yanamadula also opined that on the average he anticipated that Plaintiff's impairments or treatment would cause him to be absent from work "more than three times per month." R. 170. Plaintiff continued to be treated by Dr. Yanamadula up until the date of the hearing and his condition was stable during 2006 and 2007, with the physician administering epidural steroid injections in June 2007. R. 125-42.

The ALJ partially credited certain findings by Dr. Yanamadula, and rejected other findings:

> The claimant's treating physician opined that the claimant could lift and carry approximately 10 pounds and could stand/walk less than 2 hours and must periodically alternate between sitting and standing. He also opined that the claimant would miss more than three days a month. The undersigned considered this opinion in conjunction with the medical evidence of record. Given the fact that the records indicate that the claimant's combination of OxyContin, Perocet, and Soma controlled his pain without significant side effects, the undersigned does not give this opinion controlling weight. While the undersigned clearly has limitations, the medical evidence does not support his contention that he is permanently disabled. The state agency physician indicated that the claimant could do a significant range of light work and the undersigned gives this opinion great weight as it is supported by the consultative examination from October of 2005 and May of 2007 record which indicated that the claimant was able to do his activities of daily living with current medication regimen with a tolerable amount of pain.[2]

R. 13 (internal citations omitted).

Plaintiff argues that the ALJ erred in his decision giving more weight to the opinion of the non-examining state agency physician over Dr. Yanamadula's. Plaintiff argues that the non-examining physician's determinations regarding lifting, sitting, standing/walking were not directly supported by any opinion from an examining or treating source and are directly contradicted by Dr. Yanamadula's opinion, thus, it was entitled to little weight, and the ALJ erred in according it great weight. Plaintiff also argues the non-examining physician did not have the benefit of two years

---

[2]In so concluding, the ALJ makes no mention of Dr. Malik's 2005 conclusion that Plaintiff has become dependent and tolerant on his pain medicines and should be tapered off. R. 174.

of Dr. Yanamadula's treatment records (from 2005 to 2007) or his assessment regarding Plaintiff's ability to perform work-related activities (dated January 13, 2006).

The Commissioner responds that the ALJ properly incorporated into the RFC finding only the limitations by Dr. Yanamadula that were supported by substantial evidence, including the sit/stand option, and some of the postural and manipulative limitations. The Commissioner argues that despite Dr. Yanamadula's treating relationship with Plaintiff, his treatment records did not supply sufficient objective evidence to warrant greater limitations than those found by the ALJ, and even though Dr. Yanamadula is a specialist, his specialty is pain management and not orthopedics. The Commissioner also argues that although Dr. Yanamadula "notes limitations in the neurological and musculoskeletal systems, he does not specify any results of orthopedic or neurological examinations, such as straight leg raises, range of motion, sensory and motor testing, or grip strength." Doc. No. 15 at 6.

In this regard, the Commissioner misstates the record, which contains notes from Dr. Yanamadula of extensive testing of Plaintiff with the results of MRIs (R. 318, 320), and EMGs (R. 335-37), and consistent and frequent straight leg raise testing (R. 315, 316, 318, 320, 321). Dr. Yanamadula's notes report that the 2004 MRI of Plaintiff's lumbar spine (when his problems intensified after hearing a "pop"–R. 322) showed degenerative disc disease mainly in the L4-L5 and L5-S1 levels with a concentric disc bulge of the L4-L5 disc causing bilateral foraminal stenosis and significant herniation/extrusion of the L5-S1 disc to the left paracentral causing foraminal stenosis, and multilevel facet hypertrophy. R. 320. He also determined that Plaintiff had bilateral carpal tunnel syndrome plus left C7-T1 radiculopathy as well as left C6 radiculopathy based on EMGs. R. 331-32, 337.

The ALJ did mention these records (R. 12) prior to partially discounting Dr. Yanamadula's opinion, but seems to discount their severity by suggesting that Plaintiff showed improvement in 2005:

> Records from November of 2004 with the Central Florida Pain & Spine Institute indicate that the claimant had been consistently diagnosed with lumbar spondylosis, lumbar facet syndrome, right shoulder bursitis, and right AC joint dysfunction. The claimant was reportedly in a lot of pain but the doctor noted that he kept doing laborious work with his job. The doctor noted that he keeps telling the claimant to do a different job, but he said he could not. *Records from June of 2005 indicate that the claimant continued to have pain going down bilateral lower extremities, but was able to stand much better and his upper back was not hurting so much.* The doctor noted that the claimant continued to have severe shoulder pain and severe rotator cuff syndrome issues in the bilateral upper extremities. The doctor noted that there was nothing more that they could do because the claimant had already had numerous surgeries. The doctor opined that the claimant should get a different job because of the heavy work he has to do or go on disability.
>
> * * *
>
> Records from February of 2007 show continued diagnosis of lumbosacral neuritis, lumbar spondylosis, and intervertebral disc disorders. In May of 2007, the claimant's medical records show that he was able to do his activities of daily living with current medication regimen with a tolerable amount of pain.

R. 12 (emphasis added).

Dr. Yanamadula treated Plaintiff for pain from failed rotator cuff surgery five times, herniated discs, and radiculopathy for four years and up to the time of the hearing in 2007. R. 97-168, 274-76, 332-37. The ALJ discounted Dr. Yanamadula's limitations on Plaintiff, especially the lifting requirement and the three days per month that he would miss work, because Dr. Yanamadula's records indicated in the ALJ's opinion that the "combination of OxyContin, Perocet, and Soma" controlled Plaintiff's pain "without significant side effects" (R. 13). The ALJ thus accepted the state agency physician's opinion that Plaintiff could do a significant range of light work because it was supported by (1) "the consultative examination from October of 2005" and by (2) May 2007 record

-11-

"which indicated that the claimant was able to do his activities of daily living with current medication regimen with a tolerable amount of pain." R. 13. Plaintiff argues that the 2005 consultative examination by Dr. Malik is actually consistent with Dr. Yanamadula's restrictions, and inconsistent with a finding Plaintiff could do light work, contrary to the ALJ's decision.

As an initial matter, the ALJ erred in failing to make clear *which* "consultative examination from October 2005" he was referring to in his decision. R. 13. There are *two* consultative examinations dated October 2005: one by Dr. Malik of Pain Medicine Associates of Daytona Beach, Florida (R. 172) and one by Dr. Carpenter of Ormond Medical Arts–Family Practice (R. 195). Plaintiff argues *Dr. Malik's* consultative examination contradicts the ALJ decision and the Commissioner argues that *Dr. Carpenter's* consultative examination supports the decision. Because the ALJ did not make clear what weight, if any, he gave Dr. Malik's consultative examination his decision was not based on substantial evidence. In addition, based on the date Dr. Malik's consultative examination was performed, it would not have even been possible for the state agency reviewing physician to have reviewed Dr. Malik's examination results.

Dr. Malik, a pain medicine specialist like Dr. Yanamadula, noted Plaintiff had been in a T-Bone accident in 2003 and began seeing Dr. Yanamadula, who did multiple shoulder injections, epidural and facet median nerve injections, none of which were helpful. R. 172. "He still continues to take extensive doses of narcotics and the pain is still persisting. Pain is always present and is worse on doing any kind of activity." R. 172. Dr. Malik diagnosed Plaintiff with chronic bilateral shoulder pain; internal derangement bilateral shoulders; degenerative changes bilateral shoulders; chronic low back pain; degenerative joint disease lumbar spine; status post motor vehicle accident three years ago.

R. 173. Dr. Malik opined that as of October 2005, Plaintiff had reached maximum medical improvement and agreed with the impairment rating from Dr. Walker[3]. R. 173.

Dr. Malik opined that as to Plaintiff's shoulders, he had a longstanding history of problems, had been treated and undergone multiple surgeries and had developed chronic changes. R. 174. Dr. Malik reported that Plaintiff had painful movements with crepitus on abduction and rotation of the shoulders, tenderness of the midline and painful movements in his lumbar spine. R. 173. "As far as his opiate use is concerned, I think his body has become dependent and tolerant to opiates. I recommend that he should be tapered off. He needs advice from an addiction specialist to consider getting off narcotics." R. 174. There was "nothing else" Dr. Malik could "offer him as far as interventional pain management." R. 174.

In relying on the consultative examination by Dr. Carpenter, the family practice doctor (R. 195-202), the Commissioner points to notes by Dr. Carpenter that Plaintiff performed his activities of daily living "without much difficulty" including driving and shopping for groceries. R. 195. The Commissioner argues these notes are consistent with Dr. Yanamadula's notes in May 2007 (cited by the ALJ) that Plaintiff was able to perform activities of daily living with his medications. R. 130. The Commissioner argues as further evidence that throughout Dr. Yanamadula's records there are notes that Plaintiff's pain medication was "effective," citing generally forty-two pages of medical records, R. 198-240.

The Commissioner points to Dr. Carpenter's notes that Plaintiff got on and off the examination table without difficulty, there was no evidence of cervical or thoracic spine point tenderness; and negative straight leg raising bilaterally. R. 196. The Commissioner concedes that Dr. Carpenter

---

[3]The record does not contain records from Dr. Walker and no such doctor is listed in Plaintiff's forms, although a workers' compensation claim is listed. R. 72-73.

-13-

observed generalized lumbosacral spine point tenderness, decreased range of motion of the lumbar spine, a mild decrease in the range of motion in the right shoulder, and Plaintiff walked with a right-sided limp. R. 196, 198-99.

In partially rejecting Dr. Yanamadula's opinion, the ALJ stated: "The state agency physician (Exhibit 150[4]) indicated that the claimant could do a significant range of light work and the undersigned gives this opinion great weight as it is supported by the consultative examination from October of 2005." R. 13. The ALJ did not include a specific page citation for the "October 2005 consultative examination," but previously in the same section described the results from Dr. Carpenter's consultative examination – Exhibit 141-143 (R. 195-97) – and not Dr. Malik's. Moreover, it would have been impossible for the state agency physician to have the benefit of Dr. Malik's examination report because the state agency physician's report the ALJ cites as Exhibit 150 (R. 188) is dated October 11, 2005 (*see* R. 194), the same day as the consultative examination performed by Dr. Malik (R. 172), which was not received by the state agency until January 9, 2006. R. 172. Because the ALJ's October 18, 2007 decision did not take into account Dr. Malik's consultative examination from October 11, 2005 – completed shortly after the alleged onset date of July 25, 2005 – the ALJ's decision was not based on substantial evidence.

In partially rejecting Dr. Yanamadula's opinion, the ALJ also based his opinion that Plaintiff could do a significant range of light work based on notes in the record that he was able to do "activities of daily living with current medication regimen with a tolerable amount of pain." Plaintiff does not dispute that Dr. Yanamadula's notes indicate that the pain medications allowed him to do his activities of daily living without the severe pain; however, he argues that his ability to perform

---

[4]The record pagination marked on the top right hand of each page and the "exhibit" pagination marked on the bottom right hand of each page are completely independent pagination systems.

-14-

activities of daily living with a tolerable amount of pain is not inconsistent with Dr. Yanamadula's assessment of his limitations. The activities of daily living that he testified to at the hearing were very limited: some driving, very few household chores, some grocery shopping, some reading, going to church once a month, and bathing himself (R. 351-355), activities which do not require sitting/standing/walking for specified periods of time or lifting certain weights frequently. The doctor's conclusion as to the likelihood of Plaintiff missing multiple days of work is also not inconsistent with his ability on some other days to perform limited daily activities and occasional driving.

### *IV. CONCLUSION*

Accordingly, the decision of the Commissioner is hereby **REVERSED** under sentence four of 42 U.S.C. § 405(g) and this case is hereby **REMANDED** to the Commissioner of Social Security. Upon remand, the Administrative Law Judge ("ALJ") is instructed to properly discuss and evaluate the medical evidence of all of Plaintiff's impairments including the consultative examination by Dr. Malik dated October 11, 2005, and make findings as to the weight afforded to the report. The ALJ will afford Plaintiff the opportunity for a supplemental hearing with testimony from a vocational expert as to what work he could perform, considering his vocational factors and all his functional limitations.

The Clerk of the Court is hereby directed to enter a separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure and thereafter to close the case.

**DONE** and **ORDERED** in Orlando, Florida on August 31, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record